IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | Civil Action No. 3:12-CV-4254-BH |
| | § | |
| NATALIE A. REED, | § | |
| Defendant. | § | Consent Case |

<u>**MEMORANDUM OPINION AND ORDER**</u>

By order filed February 4, 2013, this matter has been transferred for the conduct of all further proceedings and the entry of judgment. Before the Court is the Plaintiff's *Motion for Summary Judgment Pursuant to Fed. R. Civ. P. 56*, filed September 25, 2013 (doc. 18). Based on the relevant filings, evidence, and applicable law, the motion is **GRANTED.**

## I. BACKGROUND

The United States of America (Plaintiff) seeks to satisfy a student loan obligation by Natalie Anquinette Reed (Defendant), an attorney. (Compl. (doc. 1).)[1] Between 1991 and 1994, Defendant financed her legal education with student loans. (D. Resp. App. (Sworn Aff.) (doc. 32-3) at 1.) On March 19, 2001, Defendant filed a petition for voluntary Chapter 7 bankruptcy. (D. Resp. App. (Bkcy. Notice) (doc. 31-1) at 1.) In her "schedule F", she listed several "unsecured" credit accounts, including a student loan with the Texas Guaranteed Student Loan Corp. (the TGSLC loan) with an outstanding balance of $67,914.60. (D. Resp. App. (schedule F) doc. 30-1) at 3.) After all the creditors were given notice and a creditors' meeting was held, the bankruptcy court issued a discharge order dated July 16, 2001, releasing Defendant "from all dischargeable debts" as allowed

---

[1] Citations to the record refer to the CM/ECF system page number at the top of each page rather than the page numbers at the bottom of each filing.

by 11 U.S.C. § 523. (D. Resp. App. (discharge order) (doc. 31-2) at 1.)  The discharge order also declared "null and void" all claims to personal liability against Defendant, unless "expressly" found to be "nondischargeable" pursuant to §§ 523(a)(2),(4),(6), or (15).  (*Id.*)

On February 15, 2002, the U.S. Department of Education (DOE) extended Defendant a direct consolidation loan (the DOE loan).  (P. Mot. for Summ. J. App. (Promissory Note) (doc. 20) at 8–12.)[2]  To secure the loan's repayment, Defendant executed a promissory note in the DOE's favor. (*Id.* at 8–10.)  The note provided that the purpose of the DOE loan was to discharge Defendant's "prior loan obligations."  (*Id.* at 8.)  Interest on the principal balance would accrue at a maximum rate of 8.25 % annually. (*Id.*)  Defendant would repay the loan based on an "Income Contingent Repayment Plan" (ICRP), and after paying off the consolidated loans, the DOE would send her a repayment schedule, listing her payment amount and the number of payments.  (*Id.* at 9.)

A TGSLC representative completed a "Federal Direct Consolidation Loan Verification Certificate" on February 13, 2002, that lists TGSLC as the "holder" of a loan being consolidated. (*See id.* (verification certificate) at 11.)  The certificate lists the total amount due on the account as $91,634.72, itemized as follows: (1) $67,914.61 as the principal balance, (2) $9,414.35 in accrued interest, and (3) $14,305.86 in collection costs.  (*Id.*)

On August 8, 2012, a loan analyst from the DOE completed a "Certificate of Indebtedness." (*Id.* (certificate of indebtedness) at 12.)  The certificate states that Defendant defaulted on her loan payments on July 4, 2003.  (*Id.*)  At some point in time, the DOE capitalized $3,594.00 in unpaid interest and added it to the outstanding balance, and it also credited $3,594.00 "in payments from all sources."  (*Id.*)  Including the accrued interest and other costs, the total amount due on the note

---

[2]  The DOE advanced the loan pursuant to the William D. Ford Federal Direct Loan Program under Title IV, Part D of the Higher Education Act of 1965, as amended, 20 U.S.C. § 1087a, et seq; 34 C.F.R. Part 685.  (doc. 20 at 12.)

was $171, 415.54 as of August 8, 2012.  (*Id.*)

On October 22, 2012, Plaintiff filed a complaint seeking to enforce the promissory note and collect a judgment for the outstanding debt against Defendant.  (doc. 1 at 1–3.)  Plaintiff moved for summary judgment on September 25, 2013.[3]  (doc. 18.)  Defendant responded to Plaintiff's motion for summary judgment on November 6, 2013.  (doc. 28.)  In her response, she alleges that Plaintiff is not entitled to summary judgment because (1) her student loans were discharged in bankruptcy and (2) the promissory note is unenforceable since it is missing material terms.  (*Id.* at 11–14.)  She also raises for the first time the affirmative defenses of laches, duress, and unconscionability.  (*Id.* at 14–16.)  She claims these affirmative defenses raise material fact issues and preclude summary judgment in Plaintiff's favor.  (*Id.*)  In its reply, Plaintiff argues that summary judgment is proper because none of Defendant's allegations discharge her summary judgment burden of raising triable fact issues.  (doc. 34.)

## II.  MOTION FOR SUMMARY JUDGMENT

Plaintiff seeks summary judgment on its claim to recover on the promissory note.  (doc. 18.)

### A.  <u>Summary Judgment Standard</u>

Summary judgment is appropriate when the pleadings and evidence on file show that no genuine issue exists as to any material fact and that the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(a).  "[T]he substantive law [determines] which facts are material."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  A genuine issue of material fact exists "if the evidence is such that a reasonable jury could return a verdict for the non-moving party."  *Id.* The movant must inform the court of the basis of its motion and identify the evidence that shows

---

[3]  Since interest on the principal accrued at a rate of 8.25 per year, as of September 24, 2013, the total amount due was $180,323.11.  (P. Mot. Br. (doc. 19) at 2; P. Mot. App. (doc. 20) at 4.)

there are no genuine issues of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

Once the movant makes this showing, the non-movant must then direct the court's attention to evidence in the record sufficient to establish that there is a genuine issue of material fact for trial. *Celotex*, 477 U.S. at 324. To carry this burden, the non-movant "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). The non-movant must show that the evidence is sufficient to support a resolution of the factual issue in her favor. *Anderson*, 477 U.S. at 249.[4]

All of the evidence must be viewed in a light most favorable to the motion's opponent. *Anderson*, 477 U.S. at 255 (citing *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 158–59 (1970)). Nevertheless, neither conclusory allegations nor unsubstantiated assertions satisfy the non-movant's summary judgment burden. *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc); *Topalian v. Ehrman*, 954 F.2d 1125, 1131 (5th Cir. 1992). The party opposing summary judgment must "identify specific evidence in the record" that supports the challenged claims and must "articulate the precise manner in which that evidence supports [the] claim[s]." *Ragas v. Tenn. Gas Pipeline, Co.*, 136 F.3d 455, 458 (5th Cir. 1998) (citing *Forsyth v. Barr*, 19 F.3d 1527, 1537 (5th Cir. 1994)). Summary judgment in favor of the movant is proper if, after adequate time for discovery, the motion's opponent fails to establish the existence of an element essential to her case and as to which she will bear the burden of proof at trial. *Celotex*, 477 U.S. at 322–23.

---

[4] "The parties may satisfy their respective burdens by 'citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations . . . admissions, interrogatory answers, or other materials.'" *Rooters v. State Farm Lloyds*, 428 F. App'x 441, 445 (5th Cir. 2011) (citing Fed. R. Civ. P. 56(c)(1)).

B.      **Prima Facie Case**

"Typically, suits on promissory notes provide fit grist for the summary judgment mill."

*FDIC v. Cardinal Oil Well Servicing Co., Inc.*, 837 F.2d 1369, 1371 (5th Cir. 1988) (citing *Lloyd*

*v. Lawrence*, 472 F.2d 313 (5th Cir. 1973)).  To recover on a promissory note, the plaintiff must

show that: (1) the defendant signed the note, (2) the plaintiff is the present owner or holder of the

note, and (3) the note is in default.  *United States v. Lawrence*, 276 F.3d 193, 197 (5th Cir. 2001)

(citing *FDIC v. Selaiden Builders, Inc.*, 973 F.2d 1249, 1254 (5th Cir. 1993)).

To meet its initial summary judgment burden to show it is entitled to recover on the

promissory note, Plaintiff proffers copies of the note and the DOE's certificate of indebtedness.

(doc. 20 at 8–10, 12.)  The note is dated February 15, 2002, and bears Defendant's signature.  (*Id.*

at 8.)  The certificate of indebtedness, which was certified under penalty of perjury,[5] shows that

Plaintiff is the present owner and holder of the note and states that Defendant defaulted on her loan

payments on July 4, 2003, and that as of August 8, 2012, the loan remained in default.  (*Id.* at 12.)

With these documents, Plaintiff has established its prima facie case to recover on the note and has

properly discharged its initial summary judgment burden.  *See Lawrence*, 276 F.3d at 197.[6]

The burden now shifts to Defendant to identify evidence in the record sufficient to establish

that there is a genuine issue of material fact for trial.  *See Celotex*, 477 U.S. at 324.  To discharge

her burden, she must point to specific evidence that raises a fact issue concerning whether the DOE

loan was "modified, extinguished, or otherwise does not exist."  *See United States v. Guidry*, No.

---

[5]  It was certified pursuant to 28 U.S.C. § 1746(d)(2), a criminal statute penalizing perjury.  (*See* doc. 20 at 12.)

[6]  Defendant contends that Plaintiff did not submit "the entire" promissory note because it is missing "material terms" and that there is "no default."  (*See* doc. 34 at 17–18.)  As discussed further below, these arguments fail to raise a genuine issue of material fact and do no preclude summary judgment in Defendant's favor.

CIV.A. 10-0776, 2011 WL 1326313, at *3 (W.D. La. Mar. 31, 2011) (citing to *United States of American v. Irby*, 517 F.2d 1042, 1043 (5th Cir. 1975));[7] *see also United States v. Williams*, No. CIV.A. 3:97-CV-1713P, 1998 WL 641808, at *3 (N.D. Tex. Sept. 14, 1998) ("Having decided that Plaintiff is entitled to recover on the promissory notes, the Court must consider whether any genuine issues of material fact exist that would preclude Plaintiff's Motion for Summary Judgment.").

## C.   Discharge in Bankruptcy

Defendant essentially argues that Plaintiff cannot recover on the note because the TGSLC loan that Plaintiff contends was consolidated with the DOE loan was discharged in bankruptcy in 2001. (doc. 28 at 18.) Plaintiff replies that Defendant fails to raise a triable fact issue because even though the U.S. Bankruptcy Code permits the discharge of student loans if they constitute an "undue hardship" to the debtor, there is no evidence in this case showing that Defendant took the required "steps to affirmatively obtain a determination from the bankruptcy court that her student loans owed to TGSLC constituted an undue hardship." (P. Reply Br. (doc. 34) at 2–3.)

Although "[s]tudent loans used to be presumptively discharged in a general [bankruptcy] discharge," Congress enacted legislation in 1976 to "ma[ke] it more difficult for debtors to discharge student loan debts guaranteed by States." *Tenn. Student Assistance Corp. v. Hood*, 541 U.S. 440, 449–50 (2004) (citations omitted). At the time of Defendant's bankruptcy action, the U.S. Bankruptcy Code provided that a Chapter 7 bankruptcy discharge did "not discharge an individual debtor from any . . . loan made, insured, or guaranteed by a governmental unit, or made under any

---

[7] In *Irby*, the plaintiff established its prima facie case to collect on the note, but the district court held, "on the basis of [the] defendant's denial of the amount claimed, that it was the [plaintiff's] further duty to prove all the credits given to [the] defendants." *Irby*, 517 F.2d at 1043. The district court dismissed the complaint because the plaintiff failed "to make such proof." *Id.* The Fifth Circuit reversed and remanded, holding that the "burden should have been placed upon the defendants" to show that the "proper amounts were [not] credited on the promissory note." *Id.*

program funded in whole or in part by a governmental unit or nonprofit institution," "unless excepting such debt from discharge . . . would impose an undue hardship on the debtor and the debtor's dependents." 11 U.S.C.A. § 523(a)(8)(A) (West 1998); *see also id.* § 727(b) (providing that the bankruptcy court "shall grant the debtor a discharge" of all pre-petition debts except as listed in § 523(a)).[8] The Supreme Court has held that §523(a)(8) is "self-executing," meaning that "[u]nless the debtor affirmatively secures a hardship determination, the discharge order will not include a student loan debt." *Tenn. Student Assistance Corp.*, 541 U.S. at 450 (citations omitted).  To obtain such a determination, the debtor must bring an "adversary proceeding" against the entity to whom the loan is owed "to determine whether the debt is, in fact, dischargeable." *In re Greenwood*, 237 B.R. 128, 130 (N.D. Tex. 1999) (citation omitted); *see also* Fed. R. Bankr. P. 7001(6) (defining "adversary proceeding" as a "proceeding to determine the dischargeability of a debt").

To support her claim that the TGSLC loan was discharged in bankruptcy, Defendant proffers a copy of her "schedule F", where she listed the TGSLC loan as an unsecured debt, as well as a copy of the bankruptcy court's discharge order releasing her from all debts that were "dischargeable" under § 523 and declaring "null and void" all judgments for personal liability that were not expressly found to be "nondischargeable" by the court pursuant to subsections of § 523(a) that are inapplicable here.  (docs. 29-1 at 1–2; 30-1 at 3; 31-2 at 1.)  Notably, Defendant has not presented any evidence showing that she brought an "adversary proceeding" against TGSLC (or any other creditor, for that matter) to obtain an "undue hardship" determination under §§ 523(a)(8)(A) and 727(b).[9]  Nor does

---

[8]  The sections cited here were in force between October 7, 1998 and July 29, 2002.  They were last revised in 2005.

[9]  An "undue hardship" determination was required to discharge the TGSLC loan because the loan met the criteria listed in § 523(a)(8)(A) since TGSLC is a "public, nonprofit corporation" that administers "the Federal Family Education Loan Program."   http://www.lib.utexas.edu/taro/tslac/30136/tsl-30136.html) (last visited January 28, 2014).  Under this program, "TGSLC reviews loan applications and guarantees the loans, [and] the federal government subsidizes and

Defendant proffer any evidence to show that the bankruptcy court expressly discharged her student loans through this or any other exception.  Because Defendant has failed to raise a genuine issue of material fact as to her "discharge in bankruptcy" defense, this allegation is insufficient to defeat Plaintiff's summary judgment motion. *See United States v. Gray*, No. 12-14340, 2013 WL 5180980, at *4 (E.D. Mich. Sept. 13, 2013) (granting summary judgment for the plaintiff where the defendant, "who [bore] the burden of production, ha[d] failed to produce any evidence that his student loan was actually discharged by the bankruptcy court").

**D.**   **Unenforceable Contract**

According to Defendant, "Plaintiff is not entitled to summary judgment" because the promissory note "on its face" "is not [] enforceable" since it is missing three "material terms": (1) the specific loans that were consolidated with the DOE loan; (2) the loan amount that was originally disbursed by the DOE (and by implication, the amount that is now due); and (3) the amount of her monthly payments.  (doc. 28 at 12–13.)

*1.   Specific Loans Subject to Consolidation*

Defendant contends that a triable fact issue exists because the promissory note does not name the specific loan or loans that were consolidated with the DOE loan.  (*Id.* at 11–12.)

In response, Plaintiff cites to the regulations describing the William D. Ford Federal Direct Loan Program, 34 C.F.R. § 685.220 et seq.  (doc. 34 at 4.)  It also points to the note's provision stating that the DOE loan was "disbursed . . . to discharge [Defendant's] prior loan obligations." (*Id.* at 3.)  It asserts that Defendant's own affidavit further confirms that the DOE loan and the promissory note were issued to discharge the TGSLC loan.  (*Id.*)  Lastly, it points to the TGSLC

reinsures the loans." *Id.*

verification certificate.  (doc. 20 at 8–11.)

Under the William D. Ford Direct Loan Program, a borrower who has defaulted on her "guaranteed" student loans may consolidate those loans into one or more  "direct consolidation loans" issued by the DOE.  34 C.F.R. § 685.220(a).[10]  The borrower must first "submit a completed application to the [DOE]." § 685.220(e).  Next, "[t]he holder of a loan that a borrower wishes to consolidate" must "complete and return the [DOE's] request for certification of the amount owed within 10 business days of receipt."  § 685.220 (f)(1)(i).  If the DOE approves the borrower's application, it "pays to the holder of a loan selected for consolidation the amount necessary to discharge the loan."  § 685.220(f)(1)(ii).  Upon receipt of the loan proceeds, the holder must "promptly apply [them] to fully discharge the borrower's obligation on the consolidated loan." § 685.220(f)(2).  The principal balance of the direct consolidation loan will be "equal to the sum of the amounts paid to the holders of the consolidated loans."  § 685.220(f)(4).

The promissory note provides that the DOE loan would be used to "discharge [Defendant's] prior obligations," and that the DOE, on behalf of Defendant would "send funds to the holder(s) of the loan(s) selected for consolidation."  (doc. 20 at 8.)  The amount of the DOE loan would "equal the sum of the amount(s) that the holder(s) of the loan(s) verified as the payoff balance(s) on [the] loan(s) selected for consolidation."  (*Id.*)  Once the consolidated loans were paid off, the DOE would send Defendant "a Disclosure Statement and Repayment Schedule" which would "identify [the] Direct Consolidation Loan amount and [the] additional terms of [the DOE] loan." (*Id.* at 9.)  Lastly, the note states that it is being issued pursuant to a "Federal Direct Consolidation Loan[]," and that

---

[10]  Since 2002, the year that Defendant obtained the DOE loan, the applicable regulations have been amended and renumbered four times.  Unless otherwise specified, the sections cited herein correspond to the version that was in effect between 2001 and 2006.

its terms shall be construed according to the Higher Education Act of 1965, and the corresponding DOE regulations.  (*Id.*)  Although the promissory note does not list the loans that were subject to consolidation by name, it does specify the *types* of loans that would be consolidated: those that Defendant "selected" for consolidation and that the respective holders "verified" to the DOE.  (*See* doc. 20 at 8.)

The verification certificate lists TGSLC as the "holder" of a loan being consolidated with a federal direct loan in February 2002.  (*See id.* at 11.)  In her sworn affidavit, Defendant states that her law license was suspended in February 2002 for reasons relating to the default on the TGSLC loan and that she applied for a direct consolidation loan to consolidate the loans that were not discharged in her bankruptcy.  (doc. 32-3 at 2–3.)  Notably, she listed in a bankruptcy schedule the TGSLC loan as an unsecured debt with a balance of $ 67,914.60 (doc. 30-1 at 3), which is essentially the same balance shown on the TGSLC verification certificate—$67,914.61.  (doc. 20 at 11.)

Defendant fails to cite to any legal authorities for her proposition that the note must specifically name the consolidated loans to be enforceable.  In addition, she fails to proffer evidence that controverts Plaintiff's evidence, and her own evidence confirms that the note implicitly referenced the TGSLC loan, i.e., the only loan that was subject to consolidation.  She therefore fails to create a genuine issue of material fact on this basis.

>    **2.**     ***Amount of the Loan***

>       a.     Amount Disbursed

Defendant claims that the discrepancy between the "pay off" amount listed in the TGSLC verification certificate ($91,634.82) and the "disbursed" amount listed in the DOE's certificate of

indebtedness ($91,995.82) creates an issue of material fact for trial.  (doc. 28 at 12.)  For its part, Plaintiff asserts that the difference between these two figures does not raise a triable fact issue because it corresponds to the interest that accrued on the TGSLC loan between February 13, 2002, the date the TGSLC verification certificate was submitted to the DOE, and March 7, 2002, the date the DOE disbursed the funds.  (doc. 34 at 5.)

The verification certificate shows that interest on the TGSLC loan accrued at a rate of 9 percent per year.  (doc. 20 at 11.)  As Plaintiff points out, $67,914.61 (the principal balance on the TGSLC loan), multiplied by 9 percent and divided by 365 days yield a daily interest charge of approximately $16.74.  (*See* doc. 20 at 11.)  In the 22-day lapse between TGSLC's verification and the DOE's pay off, the total interest amounted to approximately $360.  (*Id.*)  In light of this evidence, Defendant fails to raise a genuine issue of material fact regarding the initial disbursement amount.

### b.   Current Balance Due

Defendant also asserts that a factual dispute exists regarding the $180,323.11 balance Plaintiff listed in its motion for summary judgment.  (doc. 28 at 13.)  According to Defendant, Plaintiff must produce "documentation . . . to substantiate the debt," including how the $3,594.00 credit referenced in the DOE's certificate of indebtedness was applied to the debt.  (*Id.*)  In reply, Plaintiff contends that it is Defendant who bears the burden of raising triable issues of fact that any alleged credits were not applied or that the outstanding balance is incorrect, and that she has failed to discharge that burden.  (doc. 34 at 6.)

As discussed, the Fifth Circuit has held that once the plaintiff establishes its prima facie case to recover on the promissory note, the burden shifts to the defendant to produce evidence showing

that any credits were not applied or that the outstanding balance was not properly computed.  *See Irby*, 517 F.2d at 1043.  Given Defendant's failure to proffer any evidence that the $3,594.00 credit was not applied to the debt or that the total balance due is inaccurate, she fails to meet her summary judgment burden to create a genuine issue of material fact for trial.  *See Williams*, 1998 WL 641808, at *4 (holding that the defendant's "conclusory allegations" that the plaintiff had not provided any evidence to show how allegedly withheld tax refunds were credited to the indebtedness, without more, did "not withstand a motion for summary judgment"); *United States v. Johnson*, No. 02-75044, 2005 WL 1355097, at *3 (E.D. Mich. May 4, 2005) (explaining that to rebut the plaintiff's prima facie case, the defendant cannot rely on bare allegations but "must produce specific and concrete evidence of nonexistence, payment, [or] discharge" of the debt, such as "[c]ancelled checks, bank statements, tax records, and sworn affidavits").[11]

### 3.  *Monthly Payment Amount*

Defendant argues that the promissory note's failure to list a specific monthly payment amount creates an issue of material fact.  (doc. 28 at 13.)  Plaintiff responds that the lack of a specific monthly payment amount does not raise an issue of material fact because Defendant enrolled in the ICRP, meaning that her monthly payment was not fixed since it was subject to periodic adjustments.  (doc. 34 at 4.)  Plaintiff also asserts that "Defendant provides no evidence that she selected another type of repayment plan or that it was even possible to calculate a set monthly repayment amount under the [ICRP] to include in her note."  (*Id.* at 4–5.)

Borrowers that consolidate defaulted guaranteed student loans into a direct consolidated loan

---

[11]  Although Defendant does submit a sworn affidavit, she merely recites a factual summary of the case and entirely fails to provide any explanation or relevant information to support the conclusion that the $3,594.00 credit was not applied and the balance due is incorrect.  (*See* doc. 32-3.)

must agree "to repay the consolidated loan under the [ICRP]." *In re Bard-Prinzing*, 311 B.R. 219, 228 (Bankr. N.D. Ill. 2004) (citing 34 C.F.R. § 685.200(c)).   Under the ICRP, the borrower's monthly payment is calculated as the lesser of: (a) the amount that would be paid if the borrower repaid the loan in 12 years, multiplied by an annual "income percentage factor" that varies based upon the borrower's annual income;[12] or (b) 20 percent of the borrower's discretionary income, which is defined as the borrower's adjusted gross income (AGI) minus the poverty level[13] for the borrower's family size. 34 C.F.R. § 685.209(a)(2).  Each year, the DOE recalculates the borrower's monthly payment "based on changes in the borrower's AGI, the variable interest rate, the income percentage factors," and the updated poverty guidelines.  § 685.209 (c)(5).  The payment may also be adjusted at other times if the borrower experiences "special circumstances, such as a loss of employment."  § 685.209(c)(3).

Here, the note shows that Defendant agreed to repay the DOE loan under the ICRP.  (*See* doc. 20 at 8.)  The note also provides that Defendant's first payment would be "due within 30 days of the first disbursement" of the loan, and that her monthly payment amount could be "adjusted to reflect changes in the variable interest rate."  (*Id.* at 9.)  It states that after the DOE paid off the consolidated loans, it would send Defendant a "repayment schedule" listing the "repayment terms, *including [her] payment amount* and the length of [her] repayment period."  (*Id.*) (emphasis added). In light of the note's express terms and the regulations that give them context, a specific payment amount could not have been included in the note.  Since Defendant does not cite to any legal

---

[12]   Every year the DOE publishes an "income percentage factor table" in the Federal Register.  *See* C.F.R. § 685.209(a)(2)(i), (8).

[13]   The "poverty guidelines" are promulgated by the United States Department of Health and Human Services.  *See* 34 C.F.R. § 685.209(c)(5).

authority or evidence supporting a contrary conclusion, she fails to raise a triable fact issue with this argument.

Defendant's purported defenses regarding the note's contractual terms are factually and legally unsupported.  She therefore fails to discharge her summary judgment burden to create a genuine issue of material fact for trial.  *See Celotex*, 477 U.S. at 323–24 ("One of the principal purposes of the summary judgment rule is to isolate and dispose of factually unsupported . . . defenses. . ."); *Lawrence*, 276 F.3d at197 (once the plaintiff satisfies its summary judgment burden to recover on the promissory note, the burden shifts to the defendant to "set forth specific facts showing that there is  a genuine issue for trial," not just to "rest upon the mere allegations or denials of the adverse party's pleading") (internal quotations omitted).

### III.  AFFIRMATIVE DEFENSES

In her response to Plaintiff's motion for summary judgment, Defendant asserts for the first time the affirmative defenses of laches, duress, and unconscionability. (doc. 28 at 13–17.)  Because Plaintiff has met its initial summary judgment burden to show it can recover on the note, Defendant now bears the burden to raise genuine fact issues as to the applicability of these affirmative defenses to defeat summary judgment.  *See Gray*, 2013 WL 5180980, at *3 (to defeat the plaintiff's summary judgment motion, the defendant's affirmative defenses must be meritorious).

### A.      Waiver

Before proceeding to the affirmative defenses, the Court first considers Plaintiff's argument that Defendant's affirmative defenses cannot defeat its summary judgment motion because she has waived them by failing to raise them in her answer or in any other pleading prior to the close of discovery.  (doc. 34 at 8–9.)

Federal Rule of Civil Procedure 8(c) requires that affirmative defenses be included in the initial responsive pleading. Fed. R. Civ. P. 8(c). "Failure to follow this rule generally results in a waiver." *Allied Chem. Corp. v. Mackay*, 695 F.2d 854, 855 (5th Cir. 1983) (citation omitted). "Where the matter is raised in the trial court in a manner that does not result in unfair surprise, however, technical failure to comply precisely with Rule 8(c) is not fatal." *Id.* (citation omitted). An affirmative defense is not waived so long as it is raised at a "pragmatically sufficient time, and [the plaintiff] [is] not prejudiced in its ability to respond." *Rogers v. McDorman*, 521 F.3d 381, 385–86 (5th Cir. 2008) (citation omitted) (alterations in *Rogers*). The court must "examine[] the overall context of the litigation" and find no waiver where "there is no evidence of prejudice and the plaintiff has sufficient time to respond to the defense before trial." *Soto v. Ortiz*, 526 F. App'x 370, 373 (5th Cir. 2013) (per curiam) (citing *Giles v. Gen. Elec. Co.*, 245 F.3d 474, 492 (5th Cir. 2001)).

Here, Defendant asserted her affirmative defenses for the first time in her response to Plaintiff's summary judgment motion, approximately two months after the close of discovery and three months before the scheduled trial.[14]  (*See* doc. 34 at 9–12.)  Three months were arguably a "pragmatically sufficient time" for Plaintiff to prepare a response to the affirmative defenses, however.  In addition, Plaintiff has presented no evidence showing it was prejudiced by Defendant's delay, and has even fully briefed a response to her new allegations.  (*See* doc. 34 at 6–7, 11–15.) Accordingly, Defendant has not waived her affirmative defenses. *See Allianz Versicherungs, AG v. Profreight Brokers Inc.*, 99 F. App'x 10, 12 (5th Cir. 2004) (per curiam) (finding no waiver where the defendant raised the affirmative defense of limitations after discovery closed and nearly three

---

[14] The Court's scheduling order set the deadline to complete discovery for September 16, 2013, and set trial for February 10, 2014.  (*See* Sched. Order (doc. 17) at 1, 3.)

months before trial, but there was no showing that the plaintiff needed to conduct further discovery and the "fact that [the plaintiff] had three months to consider and prepare for the limitations defense . . . refute[d] [its] assertion that it was prejudicially surprised"); *compare to Kemp v. CTL Distribution, Inc.*, No. CIV.A. 09-1109-JJB, 2013 WL 2422805, at *2 (M.D. La. June 3, 2013) (finding waiver where the defendant raised an affirmative defense "almost seven years after the commencement of litigation" and "numerous rulings, including rulings on the merits, ha[d] already been made").

## B.   Laches

Defendant contends that "Plaintiff is not entitled to summary judgment because there is a material fact in dispute in that the original student loans were incurred18 [to] 20 years ago." (doc. 28 at 13.) While she concedes that there is no statute of limitations in student loan default cases, she argues that Plaintiff is barred from recovering in this action because during all those years, it: (1) "never attempted to collect on the debt"; (2) allowed the debt to be transferred from one collection agency to another; and (3) "sat back and watched interest accrue to the point that there is no way Defendant can ever pay it off." (*Id.* at 13–14.) Construing Defendant's allegations as asserting the affirmative defense of "laches," Plaintiff responds that this defense does not preclude summary judgment because it "is unavailable . . . in student loan cases." (doc. 34 at 7.)

"Laches is an equitable affirmative defense [that] must be pled and proved by the defendant." *F.D.I.C. v. Niblo*, 821 F. Supp. 441, 450–51 (N.D. Tex. 1993) (citations omitted). It is "an inexcusable delay that results in prejudice to the defendant."[15] *Abraham v. Alpha Chi Omega*, 708

---

[15] The doctrine has three elements: (1) the plaintiff delayed in asserting his right; (2) the plaintiff's delay was inexcusable; and (3) the delay resulted in undue prejudice to the defendant. *National Ass'n of Gov't Emp. v. City Pub. Serv. Bd. of San Antonio, Texas*, 40 F.3d 698, 708 (5th Cir. 1994).

F.3d 614, 622 (5th Cir. 2013) (citation omitted), *cert. denied*, 134 S. Ct. 88 (U.S. 2013).   Its

application "is analogous to statutes of limitation at law." *Niblo*, 821 F. Supp. at 450–51.

As Defendant concedes, Congress amended the Higher Education Act in 1991 to abolish the

statute of limitations in student loan collection cases. *See* 20 U.S.C. § 1091a(1)–(2);[16] *Higher*

*Education Technical Amendments of 1991*, Pub. L. 102–26, April 9, 1991, 105 Stat. 123.   Notably,

the Fifth Circuit has interpreted § 1091a as applying retroactively to student loans acquired prior to

the 1991 amendment and "also extend[ing] to eliminate the equitable defense of laches" in these

cases. *Lawrence*, 276 F.3d at 196.   Because laches is inapplicable in this case, Defendant's

contentions regarding Plaintiff's purported delay in collecting on the note cannot defeat Plaintiff's

summary judgment motion as a matter of law. *See United States v. Simon*, No. CIVA308-CV-46-

WHBLRA, 2009 WL 73801, at *3 (S.D. Miss. Jan. 8, 2009) (finding no genuine issue of material

fact precluding the plaintiff's motion for summary judgment since the defendant's laches defense

was "barred under Fifth Circuit precedent") (citing to *Lawrence*, 276 F.3d at 196).

## C.   **Duress**

Defendant also claims that a genuine issue of material fact exists because she was under

"duress" when she signed the note and it is therefore unenforceable.   (doc. 28 at 14.)   Plaintiff

responds that Defendant's duress defense fails to raise a material fact issue "as a matter of law"

because federal common law requires that "the coercive acts or financial distress [] originate with

the other party to the contract" and there "is no evidence" in this case "that Plaintiff undertook any

---

[16]   The Act provides, in relevant part, that "no limitation shall terminate the period within which [a] suit may be filed,
a judgment may be enforced, or an offset, garnishment, or other action initiated or taken by . . . the [DOE] . . . for the
repayment of the amount due from a borrower on a loan made under this subchapter. . . ." 20 U.S.C.A. § 1091a(a)(2)
(West 1998).   The statute was last amended in 2008 but remains virtually identical to the 1998 version.

coercive acts or did anything to create Defendant's financial distress."[17]  (doc. 34 at 9–10.)

"Under the common law, a contract is voidable by the victim of duress."  *Deville*, 202 F. App'x at 763 (citing to the Restatement (Second) of Contracts § 175 (1981)).  In essence, this defense "implies feebleness on one side [and] overpowering strength on the other."  *United States v. Bethlehem Steel Corp.*, 315 U.S. 289, 300 (1942).  To establish its elements under federal common law, a party must show that: (1) she involuntarily accepted the other party's terms, (2) the circumstances permitted no other alternative, and (3) the circumstances were the result of the other party's coercive acts.  *N. Star Steel Co. v. United States*, 477 F.3d 1324, 1334 (Fed. Cir. 2007) (citations omitted); *see also* Restatement (Second) of Contracts, § 175 (1981) (duress occurs when "a party's manifestation of assent is induced by an improper threat by the other party that leaves the victim no reasonable alternative").

To meet her summary judgment burden of raising a triable fact issue concerning her defense of duress, Defendant proffers her sworn affidavit.  (doc. 32-3.)  She avers that in February 2002, she was notified "in open court" that her law license "had been suspended . . . due to [a] student loan default and that [she] had to contact [TGSLC]."  (*Id.* at 2.)  When she told TGSLC representatives that the loan was discharged in bankruptcy, they assured her they would investigate the matter, "but in the meantime, the only way that a release on [her] license would be issued" was by consolidating the loans that were not discharged in bankruptcy.  (*Id.*)  Since she was "under the threat of losing

---

[17]  Plaintiff also briefs the elements of duress under Texas law.  (*See* doc. 34 at 10.)  It is well-established that "[i]n a contract suit where the United States is a party, as a general rule the contract principles of federal law govern."  *First Nat. Bank, Henrietta v. Small Bus. Admin.*, 429 F.2d 280, 286 (5th Cir. 1970); *accord Miree v. DeKalb Cnty., Ga.*, 433 U.S. 25, 28 (1977).  "The reason behind the rule" is the need for "uniformity of decision."  *First Nat. Bank*, 429 F.2d at 286–87 (internal quotations omitted). To that end, "core principles" of contract law "can be derived from the Restatements."  *Deville v. U.S. ex rel. Dep't of Veterans Affairs*, 202 F. App'x 761, 763 (5th Cir. 2006); *see also Courtney v. Andersen*, 264 F. App'x 426, 430 (5th Cir. 2008) (looking to the Restatement (Second) of Contracts to determine which party "bore the risk of mistake" "under Federal common law").

[her] livelihood, [and] possibly facing charges for the Unauthorized Practice of Law and other violations, [she] applied for [a] consolidation loan" with the DOE, believing that it would consolidate only the "loans not referenced in the bankruptcy." (*Id.*)  After she "signed and faxed back the Promissory Note, a letter was sent to the State Bar of Texas and the suspension [on her license] was immediately lifted." (*Id.*)

Notably, neither Defendant's affidavit nor any other document she has proffered into evidence show that the circumstances surrounding her decision to obtain the DOE loan and sign the note resulted from any "coercive acts" or "improper threats" by part of Plaintiff.  According to her own statements, it was Defendant who first reached out to Plaintiff in efforts to cure the default on the TGSLC loan and clear the suspension on her law license.  (*See id.* at 2.)  Since Defendant has failed to proffer evidence sufficient to raise an issue of material fact concerning the applicability of a duress defense against Plaintiff, she cannot defeat its summary judgment motion on this basis.

**D.**     **Unconscionability**

Lastly, Defendant attempts to create a genuine fact issue with her contention that the note is unenforceable because it is an "unconscionable" contract.  (doc. 28 at 16.)  In reply, Plaintiff argues that Defendant has failed to produce any evidence showing "she is entitled to an unconscionability defense." (doc. 34 at 11–12.)

According to the Restatement, "[i]f a contract or term thereof is unconscionable at the time the contract is made[,] a court may refuse to enforce the contract, or may enforce the remainder of the contact without the unconscionable term. . . ." Restatement (Second) of Contracts § 208.  Courts are in general agreement that the doctrine of unconscionability encompasses "procedural" and "substantive" elements.  *See, e.g.*, *Bell v. Koch Foods of Mississippi, LLC*, 358 F. App'x 498, 503

(5th Cir. 2009) (per curiam); *Alexander v. Anthony Int'l, L.P.*, 341 F.3d 256, 265 (3d Cir. 2003). Procedural unconscionability "refers to how the parties arrived at an agreement and the [surrounding] circumstances,"[18] and substantive unconscionability "relates to the fundamental fairness of the actual agreement." *Wilcox v. Valero Ref. Co.*, 256 F. Supp. 2d 687, 691 (S.D. Tex. 2003).

Here, Defendant's allegations in her response brief implicate only "procedural unconscionability." (*See* doc. 28 at 16.) Specifically, she asserts in her brief that Plaintiff presented her with the promissory note "and insisted that she sign it as is, without giving [her] time to consult with an attorney." (*Id.*) Neither did she have the opportunity to consider any other options, she claims, because her law "license would not be released before her next scheduled [court] appearance," unless she signed the note. (*Id.*)

To meet her summary judgment burden, she proffers her sworn affidavit. (*See* doc. 32-3 at 2.) It states that TGSLC representatives informed her that the "only way" her law license would be released was by consolidating the loans that were not discharged in bankruptcy. (*Id.*) She therefore applied for a direct consolidation loan with the DOE. (*See id.*) After she signed and "faxed back" the promissory note, "a letter was sent to the State Bar of Texas and the suspension [on her license] was immediately lifted." (*Id.*) Nothing in the affidavit supports her contentions that Plaintiff obliged her to sign the note "as is," or that it failed to give her time to consult with an attorney or

---

[18]   To determine procedural unconscionability courts consider factors, such as: (1) the presence of deception, overreaching, and sharp business practices by part of the stronger party; (2) the absence of a viable alternative; (3) the relative acumen, knowledge, education, and financial ability of the parties involved; (4) knowledge of the stronger party that the weaker party will be unable to receive substantial benefits from the contract; and (5) knowledge of the stronger party that the weaker party is unable reasonably to protect his interests. *Belanger v. BAC Home Loans Servicing, L.P.*, 839 F. Supp. 2d 873, 880 (W.D. Tex. 2011); *Premiere Holdings of Texas LP v. Sterling Reit, Inc.*, No. CIV A H-04-0916, 2006 WL 2796387, at *8 (S.D. Tex. Sept. 26, 2006).

consider other alternatives. (*See id.*)  As discussed, when a moving party has carried its summary judgment burden, the non-movant must do more than simply create "some metaphysical doubt as to the material facts" and "must come forward with *specific facts* showing that there is a genuine issue for trial." *Matsushita*, 475 U.S. at 586–587 (emphasis added).  "Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'" *Id.* at 587 (citation omitted).  Here, apart from the statements in her affidavit implying she had no "viable alternative," Defendant has not identified any specific facts that would lead a rational trier of fact to find in her favor as to the existence of the procedural unconscionability "factors", such as any "deception, overreaching, or sharp business practices" by part of Plaintiff, or Plaintiff's knowledge that Defendant would not receive "substantial benefits" from the promissory note.  *See Belanger*, 839 F. Supp. 2d at 880; *Premiere Holdings of Texas*, 2006 WL 2796387, at *8.[19]

In sum, based on all of the evidence presented by the parties, Defendant has failed to meet her summary judgment burden of raising genuine issues of material fact to defeat Plaintiff's motion to recover on the promissory note.

## IV.  CONCLUSION

Plaintiff's motion for summary judgment is **GRANTED.**  Judgment will be assessed against Defendant for $180,323.11, the amount set out in Plaintiff's motion, plus pre-judgment interest of $21.65 per day from September 24, 2013, through the date of judgment, and post-judgment interest at the legal rate per annum and compounded annually from the date of judgment until paid.

---

[19]   At the end of this section, Defendant also states that "[a]t no time did Plaintiff seek to validate the debt as required by 15 U.S.C. § 1692g" of the Federal Debt Collection Practices Act.  (doc. 28 at 14.)  To the extent she asserts a counterclaim against Plaintiff under the FDCPA, the claim is not considered because it is not properly before the Court

**SO ORDERED** on this 5th day of February, 2014.

IRMA CARRILLO RAMIREZ
UNITED STATES MAGISTRATE JUDGE